329 So.2d 795 (1976)
O'Neal Walter SCOTT
v.
I. L. LYONS & COMPANY, LTD., et al.
No. 6881.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearings Denied April 13, 1976.
Writs Refused June 2, 1976.
*796 Meyer Sabludowsky, New Orleans, for plaintiff-appellant.
Drury, Lozes & Curry, James H. Drury and Madison C. Moseley, New Orleans, for defendant-appellee.
Christovich & Kearney, C. Edgar Cloutier, New Orleans, for intervenor-appellant, Ranger Ins. Co.
Before SAMUEL, REDMANN, LEMMON, SCHOTT and BEER, JJ.
LEMMON, Judge.
Plaintiff has appealed from the dismissal, after a trial on the merits, of his tort suit based on a premises defect which allegedly caused him to fall while alighting from a truck.
The accident occurred when plaintiff, a truck driver, was delivering freight to a warehouse owned and leased by the two defendants. As instructed by defendant lessee's employee, plaintiff had backed his truck into the warehouse door at an angle in order to keep the alley clear and to get as close as possible to the stationary conveyor, which was located just inside the door. After plaintiff had unloaded the freight, he began a two-step descent from the stationary apron across the rear of the truck. The height of the apron was about four feet above ground level outside the warehouse and about three feet above the level of the raised warehouse floor. In the second step he caught his left knee on a *797 hook on the inside frame of the warehouse door and was thrown onto the warehouse floor, landing on both knees.
The principal issues on appeal are whether the object which caused plaintiff's fall constituted a defect or hazard and whether plaintiff was himself negligent in failing to discover the object or in descending from the truck in the manner he did.
The following photograph, depicting plaintiff and the truck in question, illustrates the first phase of the two-step descent:

*798 In the position shown in the photograph plaintiff had already closed the curtain and, holding onto the chain with his left hand, had stepped down from the apron of the truck and placed his right foot on an iron rail or step, which was located between the apron and ground level.
After stepping down with his right foot, as shown, and completing the first phase of the two-step maneuver, plaintiff attempted to complete the second phase by moving his left leg down. This second step would normally have placed plaintiff's left foot on the ground; however, with the rear of his truck angled inside the door of defendants' warehouse, plaintiff intended by this second step to place his left foot on the warehouse floor and then to go to a desk just inside the door, where defendant lessee's employee had to sign the delivery ticket.
The following photograph shows another truck (without a projecting apron) backed into the warehouse door and further shows the hook (circled) protruding from a metal plate, which is attached to the brick that forms the side of the door opening: [1]
*799 
The distance between the conveyor and the side of the door was approximately 2½ feet. The L-shaped hook, two to three inches long and three feet above the ground (two feet above the raised warehouse floor) had been in that location during the many years that defendant lessee occupied the building, but had never been used.

I
Defendants admittedly had a duty to keep the premises reasonably safe and *800 free of hazards for plaintiff and other truck drivers who delivered freight on the premises. They contend, however, that the hook was not a hazard which rendered the premises unsafe and that no duty was therefore imposed upon them to correct the known condition or to warn plaintiff of its existence.
Plaintiff would not have fallen if the hook had not been in that location. The punctate type of injury to the knee supports the factual finding that he hit the hook and not the wall. Therefore, there is no real dispute as to whether the hook was a cause-in-fact of the fall. The key inquiry is whether an ease of association exists between the injury and the duty which plaintiff asks us to apply to defendants. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). This inquiry involves the determination as to whether a truck driver could reasonably be anticipated to alight from the truck in close proximity to the hook so that the hook would present a risk of injury during the descending maneuver. And in argument before this court defendants pointed out that if plaintiff had followed the more reasonable procedure of descending onto the ground and then walking through the warehouse door, instead of jumping 3½ to 4 feet from the rear of the truck directly onto the warehouse floor in the proximity of the hook, the injury would not have occurred.
Plaintiff testified he did not jump, but rather stepped down, and that he did not have room to step on the ground between the truck and the warehouse floor. There is some conflict in the testimony as to the distance from the back of the truck to the warehouse floor. Defendant lessee's employee (who did not witness the incident) estimated that a truck could only get within 3½ to 4 feet of the warehouse floor. The second photograph above, however, shows the doorjamb to be two bricks wide, so that if plaintiff had backed his truck straight into the doorway, the apron of the truck would have been only the width of two bricks plus the width of the protecting post from the warehouse floor. This photograph and others appear to be more supportive of plaintiff's estimate that he was about two feet from the warehouse floor when he stepped from the iron rail in the second phase of his two-step descent, and a two-foot long step from a height of one foot above the raised floor can hardly be considered a jump. We conclude that the rear of plaintiff's truck was near enough to the raised floor for him to reach the floor with a reasonable descending maneuver.
In our opinion the hook constituted a hazard which involved an unreasonable risk of harm to plaintiff. Defendants should have reasonably anticipated that a truck driver, once the unloading of his truck was completed, might descend from the rear of the truck in close proximity to the hook, which was located near the freight-receiving desk, and might pass close enough to the hook to become entangled with it during his descent or during his entry into the warehouse.[2]
The fact that the hook protruded only three inches lessened the likelihood of an occurrence such as befell plaintiff. Nevertheless, since a descending maneuver such as that undertaken by plaintiff was reasonably to be expected when a truck driver made a delivery at this door, defendants (with actual knowledge of the hook) had a duty to remedy the hazard or to take other steps to protect plaintiff against the danger. We hold that defendants' failure to discharge this duty was a legal cause of the accident.

*801 II
Defendants also pleaded contributory negligence, alleging that the "hook was in full view . . . ."
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, the standard being that of a reasonable man under like circumstances. Smolinski v. Taulli, La., 276 So.2d 286 (1973). Defendant bears the burden of proving contributory negligence.
Defendant lessee's employee testified that the rusty hook "is so small that no oneit is not noticeable by anyone." While the hook apparently was large enough to constitute a hazard, it was small enough to be virtually concealed. Furthermore, since the hook was lower than the apron of the truck and was not painted or marked so as to make its presence obvious, it was even more difficult for plaintiff to see the object.
Additionally, in the consideration of negligence and contributory negligence, the law does not necessarily demand identical conduct of the plaintiff and the defendant. Hall v. Hartford Acc. & Indemnity Co., 278 So.2d 795 (La.App. 4th Cir. 1973); Prosser, The Law of Torts, Ch. 11, p. 419 (4th ed. 1971). Varying factors affect what conduct the standard of the reasonable man requires. As to the duty of discovering hazardous conditions on premises, there is a greater duty imposed on the owner or the lessee than on the visitor. The owner or lessee has a duty to discover all reasonably discoverable defects (in this case defendants had actual knowledge of the hook), while the visitor legally on the premises has only the duty to discover those hazards which are readily observable in the exercise of ordinary vigilance. In this respect we further note that plaintiff was making his first delivery at this entrance.
Considering all the circumstances of this case, we conclude defendants have failed to prove that plaintiff was unreasonable or negligent in failing to discover this particular hazard or in descending from the truck in the manner in which he did. Had the hook not been located in the path of plaintiff's descent, the accident would not have occurred.

III
In the March 10, 1972 accident the 32-year old plaintiff struck his left knee on the hook, which caused him to fall with forceful flexion on both knees, more heavily on the right. He was treated at an industrial clinic and, because of recurrent knee pain, was eventually referred to Dr. George Cary, an orthopedic surgeon.
Dr. Cary examined plaintiff on March 24, 1972 and found crepitation in both knees and tenderness on compression, as well as a healing laceration of the left knee and a slight lumbosacral sprain. He prescribed and administered a course of conservative treatment, and the back sprain resolved in due time.
As to the knee injury, Dr. Cary ultimately diagnosed chondromalacia, worse in the right knee, which he attributed as the cause of plaintiff's persistent complaints of pain after working. When plaintiff's condition had not improved after 15 months, the doctor in June, 1973 recommended surgery to relieve the discomfort. Plaintiff at first consented to surgery, but changed his mind because he had to support his family and had been working consistently, although in pain. In February, 1974, however, plaintiff told the doctor that he had decided to submit to a bilateral patellectomy (which had not yet been performed at time of trial).
Another orthopedist, Dr. Raymond Kitziger, also examined plaintiff and made generally the same findings and diagnosis (he additionally found a positive Mac-Murray *802 test for a torn ligament). This doctor, however, stated he would not "push for" surgery, since plaintiff was functioning in his work, but admitted the ultimate necessity for surgery was probable.
Dr. Kitziger estimated the cost of surgery, including hospitalization, surgical fees and related expenses, at approximately $1,400.00 for each knee, with a recuperative period of at least four months required after each operation. He further opined that, after surgery, plaintiff will have a permanent partial disability of at least 20% and will have difficulty in performing such duties associated with truck driving as climbing onto the back of the truck and loading and unloading.
Thus, plaintiff has endured substantial pain and suffering, although he has not yet incurred any considerable loss of wages. The recommended surgery will relieve the discomfort, but apparently will cause a further impairment of earning capacity, at least insofar as plaintiff's ability to earn wages as a truck driver with another employer.[3]
Perhaps the most difficult quantum cases are those in which the plaintiff sustains a permanent partial disability which at time of trial has only potential effect on his future earnings because of continued employment with the same employer. A court's failure to recognize the impairment of earning capacity is unfair to the plaintiff; on the other hand, the court must recognize, in fairness to the defendant, that this impairment will perhaps have little effect on future earnings unless the plaintiff is thrust on the open labor market.
In the present case the evidence is lacking as to the factors bearing on the amount of wages plaintiff will reasonably be expected to lose over his remaining work life. There was no evidence as to what other type of work plaintiff will or will not be able to perform after the surgery, and it was not established whether plaintiff's partial disability will worsen in the future. Furthermore, while we recognize that plaintiff continued to work (in pain) because of economic necessity, we note that the only medical testimony on the point established that plaintiff will be able to continue working as a truck driver as long as he does not have to perform heavy loading and unloading duties.
Considering the pain and suffering plaintiff has already sustained, the $434.75 in medical expenses to date, the amount required for medical expenses in connection with the probable surgery and the amount of wages which will be lost during the periods of recuperation following two surgical procedures and the pain and suffering associated therewith, as well as the permanent partial disability and impairment of earning capacity, we set the amount of damages at $27,500.00.
For these reasons, the judgment of the trial court is reversed, and it is now ordered that judgment be rendered in favor of plaintiff and against defendants in the sum of $27,500.00, together with legal interest thereon from the date of judicial demand until paid, and for all court costs, subject to the claim asserted in the intervention of plaintiff's employer's workmen's compensation insurer.
REVERSED AND RENDERED.
BEER, J., dissents and assigns reasons.
BEER, Judge (dissenting).
I do not agree with the majority's conclusion that defendants "should have reasonably *803 anticipated that a truck driver, once the unloading of his truck was completed, might descent from the rear of the truck in close proximity to the hook, which was located near the freight-receiving desk, and might pass close enough to the hook to become entangled with it during his descent or during his entry into the warehouse." I agree with the trial judge's finding that there was no negligence on the part of the defendants.
In my view, the plaintiff has not carried the burden of proving that the defendants failed to keep the premises reasonably safe. The majority opinion has the effect of permitting the plaintiff to pull himself up by his own bootstraps by conjecturing that the fall would not have taken place if the hook had not been where it was and, thus, was a damage causing defect that defendants should have anticipated.
Since I would affirm the trial court's judgment, I must respectfully dissent.
NOTES
[1] The truck shown in the photograph has the right rear corner angled into the door opening, while plaintiff testified that the left rear corner of his truck was angled into the door on the day of the accident.
[2] In this respect we consider irrelevent the argument that the accident would not have occurred if plaintiff had descended from the truck in another manner. The relevent inquiry is whether the manner in which plaintiff did descend from the truck was reasonable and to be reasonably anticipated.
[3] Plaintiff's present employer, who was condemned by judgment in a consolidated case to pay compensation benefits for a total and permanent disability, granted plaintiff's request, about a month after the accident, to drive a tractor-trailer unit. This unit is more difficult to drive, but the loading and unloading is done mostly by mechanized equipment.

Plaintiff's average weekly earnings were $184.80.